# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.M.-1**

**No. 18-0663** (Barbour County 16-JA-102)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.M.-2, by counsel Aaron P. Yoho, appeals the Circuit Court of Barbour County's June 18, 2018, order terminating his parental rights to J.M.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than employing a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2016, the DHHR filed a child abuse and neglect petition against petitioner and the mother, alleging that the child was left in the maternal grandparents' care without visits or support from the parents. Specifically, the DHHR alleged that petitioner had a history of domestic violence and substance abuse in the home, had recently been convicted of possession with intent to deliver a controlled substance, and was incarcerated, rendering him unable to properly care for the child. Following petitioner's incarceration, the mother left the child in the grandparents' care.

The circuit court held an adjudicatory hearing in July of 2017. Petitioner stipulated to the allegations contained in the petition and testified that, in 2016, he was sentenced to one to five years of incarceration for his conviction of possession with intent to deliver a controlled

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as J.M.-1 and J.M.-2, respectively, throughout this memorandum decision.

1

substance. Petitioner was given the opportunity to participate in a community corrections program, but continued to use drugs during that time, leading to the revocation of this alternative sentence and the imposition of his underlying term of incarceration. Petitioner admitted to abandoning the child due to his incarceration and stated that he would become eligible for parole in April of 2018. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent.

In April of 2018, the circuit court held a dispositional hearing. The court was advised that petitioner had been released from incarceration to attend a drug rehabilitation program and participate in a work release program. Petitioner was ordered not to have contact with the mother during that time, but evidence established that they were in contact. Petitioner's privilege to participate in the work release was revoked due to his contact with the mother and he was remanded to prison to finish the remainder of his sentence, or if applicable, be released on parole. The circuit court noted the aggravated circumstances of abandonment, found that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future, and found that termination of petitioner's parental rights was necessary for the child's welfare. It is from the June 18, 2018, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first employing a less-restrictive alternative. Specifically, petitioner avers that disposition pursuant to West Virginia Code § 49-4-604(b)(5) was appropriate because the child was placed with relatives and it would permit him the chance to visit with the child, at a minimum, after he is released from prison. We disagree.

---

[2]Both parents' parental rights were terminated below. J.M.-1 was placed in a relative's home with a permanency plan of adoption therein.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. At the time the petition was filed, petitioner was incarcerated due to his conviction of possession with intent to deliver a controlled substance. Petitioner was twice given the opportunity to participate in an alternative sentence, but failed to comply with the terms and conditions of each program and, as a result, was forced to serve the remainder of his sentence. As such, petitioner remained incarcerated for most of the then two-year-old child's life, was unable to participate in any services designed to correct the conditions of abuse and neglect, and developed no bond with the child. While petitioner argues that granting him a disposition pursuant to West Virginia Code § 49-4-604(b)(5) would provide him with the opportunity to parent the child following his release, we note that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

3

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based upon the evidence, we find that the circuit court did not err in terminating petitioner's parental rights upon proper findings that there was no reasonable likelihood that he could correct the conditions of abuse in the near future and that termination of his parental rights was necessary for the child's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 18, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment